UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL YEZBICK

    Plaintiff,

-vs-                                                            Case No. 13-

GREAT LAKES HIGHER EDUCATION
CORPORATION, and KEY BANK, and
KEY BANK STUDENT LOAN TRUST,

    Defendants.
_____/

ADAM S. ALEXANDER (P53584)
The Alexander Law Firm
Attorney for Plaintiff
17200 W 10 Mile Rd Ste 200
Southfield, MI 48075
(248)246-6353
_____/

## **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

## **JURISDICTION**

1.     This court has federal question jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331, 1337.

2.     This court has federal question jurisdiction under the Fair Credit Reporting Act, 15 U.S.C. §1681 and 28 U.S.C. §§1331, 1337.

3.     This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## **PARTIES**

4.     Daniel Yezbick ("Plaintiff" or "Yezbick") is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq ("FCRA") at §1681a(c).

5. Plaintiff resides in White Lake, Michigan in Oakland County. The transactions that are the subject of this lawsuit occurred in White Lake, Michigan.

6. Defendant Great Lakes Higher Education Corporation ("Great Lakes"), is student loan provider and furnisher of information as contemplated by the Fair Credit Reporting Act ("FCRA")15 U.S.C. §1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

7. Defendant Key Bank, ("Key Bank"), is a nationally chartered bank and financial services company with its principal office located in Cleveland, Ohio, and furnisher of information as contemplated by the Fair Credit Reporting Act ("FCRA")15 U.S.C. §1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

8. Defendant Key Bank Student Loan Trust, ("Trust"), upon information and belief is a subsidiary of Key Bank, and furnisher of information as contemplated by the Fair Credit Reporting Act ("FCRA")15 U.S.C. §1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

## GENERAL ALLEGATIONS

9. Plaintiff received student loans from Great Lakes which he is currently paying on.

10. The subject loans were in forbearance in 2010.

11. The loans came out of forbearance in December of 2010, with the first post-forbearance payment due in January of 2011.

12. Plaintiff made timely payments from January to June of 2011, and then contacted Great

Lakes to put the accounts back in forbearance due to a financial hardship.

13. While the paperwork was being processed for the above referenced forbearance, Plaintiff was advised by Great Lakes no to make any payments until the forbearance was approved.

14. Plaintiff made a payment of $519.73 on or about July 20, 2011.

15. Plaintiff was then advised he could only get a six month forbearance, and advised Plaintiff to call back after the six month period or simply resume regular payments.

16. Accordingly, Plaintiff did not receive the normal monthly billings from Great Lakes.

17. While on his Honeymoon in October of 2011, Plaintiff received a voice mail from Great Lakes alleging that the account was past due.

18. Plaintiff promptly called Great Lakes and reminded them of the forbearance.

19. Great Lakes didn't know what was going on, causing excessive confusion.

20. Great Lakes initially mistakenly denied that Plaintiff was in forbearance and requested payment for August, September, and October of 2011 to allegedly bring the account current.

21. Plaintiff agreed to make the 3 payments and did so, cutting a check for $378.04 in October of 2011 which included an illegal and unconscionable $10.00 service fee.

22. During this period, Plaintiff complained to Great Lakes that they were confused, that they had in fact placed the account in forbearance, and that this was evidenced by the lack of monthly statements which would have indicated the payments were due, who to pay, and other account information.

23. After hearing these complaints and logic, Great Lakes representatives advised Plaintiff that they would now place the account in forbearance.

24. Despite this promise, and contrary to logic and reason, Plaintiff received a monthly invoice in November of 2011.

25.     Plaintiff promptly contacted Great Lakes to find out what was going on. Great Lakes advised Plaintiff that they were "still working on it" or similar language.

26.     Accordingly, Plaintiff made the November payment for $122.68 dated November 15, 2011.

27.     Plaintiff did not receive a monthly statement in December, so he was under the impression that Great Lakes had corrected their errors and achieved the forbearance which they had repeatedly promised would occur.

28.     In February of 2012, Plaintiff received a call from Key Bank indicting that Great Lakes had turned the account over to them for collection to Key Bank due to alleged non-payment of the $122.68 which Plaintiff paid.

29.     Plaintiff advised Key Bank that he was in forbearance and had paid as required. However Great Lakes advised Plaintiff they couldn't verify the information and that it was now out of their hands, and Plaintiff should contact Great Lakes directly.

30.     At this point Key Bank advised Plaintiff he needed to make 2 payments and a $10.00 service fee to allegedly bring the account current.

31.     Plaintiff then called Great Lakes who wrongly denied receiving Plaintiff's payments, and had no record of the November, 15, 2011 payment which was cashed.

32.     Plaintiff was asked to fax proof and he immediately faxed over to Great Lakes a copy of the $122.68 check as well as a bank statement showing the account was current back to October of 2011. Plaintiff was also asked to fax the forbearance request, which he did.

33.     Plaintiff then heard nothing from Defendants until April of 2012, when Plaintiff received a call from Key Bank alleging that the account issue was not rectified with Great Lakes and that Key Bank was unable to view the payments to Great Lakes which Plaintiff had sent.

34.     Key Bank again asked for payments, even though they again received the forbearance request.

35. This time, Key Bank requested payment for March and April of 2012, and advised Plaintiff that once these payments were made, Plaintiff's account could then be placed in forbearance.

36. Accordingly, Plaintiff made a $245.00 payment based on this representation.

37. In May of 2012, contrary to the above agreement, Plaintiff was advised that the account was returned to Great Lakes and that Plaintiff needed to make a payment of $1,190.87 by March 1, 2012, "to bring all accounts current."

38. This was shocking and confusing news to Plaintiff, who has been lied to several times by Defendants, but actually believed the agreement to forbear in February which is referenced above, would be honored this time.

39. After reneging again on their promises and failing to put the account in forbearance, Defendants continued to lose account information, and failed to provide Plaintiff with adequate information about the account, including balance due, payment dates, invoices, or information about the requested forbearance.

40. Plaintiff continued to contact Defendants during the summer of 2012 and was advised they had no record of the account, but that they would send information when they found it.

41. After receiving dunning letters from Key Bank and reviewing his credit report, Plaintiff ascertained that the subject account was charged off in November of 2011.

42. Defendants have consistently engaged in deceit and negligence regarding the handling, administration and reporting of Plaintiff's account.

43. Defendants have either negligently or purposely kept Plaintiff in the dark concerning the status of his account, despite repeated requests for information.

44. Defendants have negligently lost information, provided Plaintiff with inaccurate information and lied about the status of Plaintiff's account.

45..    Defendants reported false and negative credit information to the three major credit bureaus.

46.    Plaintiff disputed this inaccurate account with the three major credit bureaus.

47.    Despite this fact, Defendants incorrectly verified the negative incorrect credit reporting.

48.    Defendants were required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

49.    Defendants failed to conduct a reasonable investigation and wrongly verified inaccurate information in connection with Plaintiff's credit reports and/or failed to conduct any reinvestigation.

50.    DEFENDANTS failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report.

51.    Plaintiff discovered false information on one or more of his consumer reports.

52.    The false information was and continues to be furnished by Defendants.

53.    Plaintiff disputed that false information by transmitting actual notice of his dispute along with an adequate description and explanation to all three major credit bureaus.

54.    Plaintiff's request for reinvestigation included sufficient information to provide actual notice that the false information was inaccurate and the sources of information were not reliable.

55.    Defendants failed to reasonably reinvestigate under 15 U.S.C. § 1681s-2(b) and this failure was willful, and wrongly verified the inaccurate information.

56.    In the spring of 2013, Plaintiff attempted to purchase a home and obtain a mortgage with Quicken Loans and Charter One Bank. However, the errors which appear on Plaintiff's credit report caused him to be denied for the mortgage.

57.    As a result of the negative credit reporting, Plaintiff's credit score dropped substantially.

58.    As a result of Defendants' willful failure to abide by 15 U.S.C. § 1681s-2(b), Plaintiff has suffered and continues to suffer significant damages.

## COUNT I – FAIR CREDIT REPORTING ACT

59. Plaintiff incorporates the preceding allegations by reference.

60. Defendants were required under 15 U.S.C. § 1681s-2(b), to respond to the request for reinvestigation initiated by Plaintiff through one or more credit reporting agencies by completing an inquiry into the facts underlying the trade-line and providing accurate information to the credit reporting agencies regarding that trade-line.

61. In the event that Defendants were unable to verify the information which they had reported, Defendants were required to advise the credit reporting agency of this fact.

62. Following the reinvestigation, Defendants reported the erroneous credit information with actual knowledge of errors, in violation of the FCRA, 15 U.S.C. § 1681s-2(b).

63. Following the reinvestigation, Defendants reported the erroneous credit information and consciously avoided knowing that the credit information was inaccurate, in violation of the FCRA, 15 U.S.C. § 1681s-2(b).

64. Following the reinvestigation and dispatch of notice directly to Defendants, Defendants reported credit information that was not in fact accurate, in violation of the FCRA, 15 U.S.C. § 1681s-2(b).

65. Following the reinvestigation and dispatch of direct notice to Defendants, Defendants failed to notify the consumer reporting agencies to whom it reported credit information that the debt was disputed, in violation of the FCRA, 15 U.S.C. § 1681s-2(b).

66. Defendants willfully refused to properly to put in place adequate procedures to reinvestigate the inaccuracies in Plaintiff's credit report in violation of 15 U.S.C. §§ 1681s-2(b) and 1681n.

67. In the alternative, Defendants negligently failed to put in place procedures to complete an adequate reinvestigation of disputed credit information in violation of 15 U.S.C. §§ 1681s-2(b) and

1681o.

68. Defendants willfully refused to properly reinvestigate the inaccuracies in Plaintiff's credit report in violation of 15 U.S.C. §§ 1681s-2(b) and 1681n.

69. In the alternative, Defendants negligently failed to conduct a proper reinvestigation of Plaintiff's credit reporting dispute in violation of 15 U.S.C. §§ 1681s-2(b) and 1681o.

70. Defendants unlawfully caused there to be three separate negative trade lines for one account in violation of the Fair Credit Reporting Act.

71. Plaintiff has suffered damages as a result of these violations of the FCRA.

## COUNT II – DEFAMATION

72. Plaintiff repeats and realleges and incorporates by reference the allegations in the preceding paragraphs with the same force and effect as if herein set forth.

73. Defendants caused to be published one or more written false statements which were intended to impeach Plaintiff's honesty, integrity, credit worthiness and/or reputation.

74. The defamatory statements were, including, but not limited to, the following:

   a). That Plaintiff was 60 days late or 90 days late;

   b) that there was a "delinquency of 120 days on 11/2011 for $505";

   c) that the "date closed" on the account was 12/31/2011;

   d) that Plaintiff had an account with Key Bank;

   e) that Plaintiff had an account with Key Bank Student Loan Trust;

   f) that Plaintiff had an unpaid balance to Key Bank or Key Bank Student Loan Trust;

75. Plaintiff is not a public figure.

76. The statements imputed by Defendants to the public through the three major credit reporting agencies represents a slur on Plaintiff's character by Defendants, including his honesty, integrity,

virtue, or reputation, and credit worthiness.

77. The defamatory statements resulted in damages to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for injunctive relief and damages in an amount deemed at time of trial to be just, fair, and appropriate.

### DEMAND FOR JUDGMENT AND RELIEF

. Accordingly, Plaintiff requests:

a. Statutory and actual damages;

b. Deletion or correction of any and all accounts being wrongfully reported to any credit bureau by any Defendant;

c. Statutory costs and attorney fees;

d. Injunctive relief, including, but not limited to, cessation of debt collection attempts, deletion or correction of the accounts listed by Defendants;

e. Compensatory and punitive damages;

f. Damages for emotional distress, humiliation, and embarrassment;

g. Any other relief which this Court deems appropriate.

### JURY DEMAND

Plaintiff hereby requests a Jury Trial.

Respectfully submitted,

By: **/s/ ADAM S. ALEXANDER**
ADAM S. ALEXANDER (P53584)
Attorney for Plaintiff
17200 W. Ten Mile Rd., Suite 200
Southfield, MI  48075
(248) 246-6353
adalesq@gmail.com

July 3, 2013